OPINION OF THE COURT
Bernard F. McCaffrey, J.
This motion and cross motion involve questions of first impression in this State regarding the new equitable distribution marital law enacted by the New York State Legislature on June 3, 1980 (L 1980, ch 281).
This is a motion by defendant to serve an amended verified answer, and a cross motion by plaintiff for an order discontinuing the action brought by plaintiff herein,
Approximately one year ago an action for divorce on grounds of alleged abandonment was commenced by plaintiff by the service of a summons and verified complaint on July 18, 1979. Defendant’s original answer was served July 25, 1979.
Defendant’s original answer consisted of denials with no counterclaim interposed. It is defendant’s claim that, upon the institution of this action by plaintiff, it had been thought that the matter could be resolved by a negotiated settlement, whereby plaintiff could have a divorce with the financial *680 aspects determined by said agreement. It is defendant’s further claim that such negotiated settlement did not and could not be brought about, and defendant now seeks to interpose a counterclaim in which defendant seeks a judgment of divorce from plaintiff on grounds of alleged cruel and inhuman treatment. The action has yet to be placed on the trial calendar, and has not been given a calendar number.
Plaintiff on the other hand opposes such amendment and seeks a discontinuance on the grounds that she was not concerned about a divorce when she consulted her original attorneys, but that she was particularly concerned about obtaining support and other provisions to be negotiated before any legal action would be commenced. Plaintiff remains concerned about the financial security of herself and three children stemming from her role as wife and mother, and allegedly having worked to assist defendant throughout his career as a physician. Plaintiff claims she would have been satisfied with a legal separation, and contends that her original counsel "mistakenly” brought an action for divorce. Plaintiff also claims that, although she did sign a verified complaint, she had no knowledge that the instrument she signed was a verified complaint, and states that she did not read same and never saw the words "Action for Divorce”.
The defendant opposes plaintiff’s motion to discontinue her action contending that it is merely a device to renew her action under the new equitable distribution divorce law.
CPLR 3217 governs to a great extent discontinuance. Obviously, without a stipulation between the parties and since there has been service of a responsive pleading, the provisions of CPLR 3217 (subd [a]) are not applicable here. Leave of the court to discontinue is required, and in this regard CPLR 3217 (subd [b]) provides in pertinent part as follows: "Except as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper.”
Ordinarily, public policy could be said to favor the preservation of the family unit and the particular scruples or religious and moral beliefs of a party, and thus look kindly upon a proposed discontinuance of a divorce action by the one bringing the action. (Armstrong v Armstrong, 176 Misc 240.) However, one of the factors to be considered by the court is — Is there any prejudice to either party.
Furthermore, the general rule that plaintiff has a right to *681 discontinue his or her action upon appropriate terms cannot be strictly applied in divorce cases because:
(1) the rights of the parties of record are not alone to be considered. The public is regarded as a party and must be treated as such by the court.
(2) of the public interest the court has wider discretion in the control of the course of procedure in matrimonial actions than in others. (Winans v Winans, 124 NY 140.)
An application for leave to discontinue an action is addressed to the legal, not the arbitrary discretion of the court, and it may not be denied capriciously, but may be refused whenever circumstances exist which afford a basis for the exercise of legal discretion. (Winans v Winans, supra.) It is clear then that the court has discretion here, and good reasons based upon good faith and sincerity should be shown. (Shinkman v Shinkman, 72 NYS2d 579, affd 273 App Div 766.)
There does not appear to be any indication in the papers submitted of any possible reconciliation. Only financial considerations appear to motivate plaintiff’s present application. The facts do not appear to require the exercise of the court’s discretion in plaintiff’s favor at this time.
There are other compelling reasons why discontinuance should not be granted. There is the possible prejudice to the defendant who wishes to interpose a counterclaim for affirmative relief on his own behalf at this point in time. (See Vitoff v Vitoff, 69 NYS2d 394.) By interposing such counterclaim in the action commenced by the plaintiff, the defendant then anchors his claim upon plaintiff’s action.
Plaintiff’s action for divorce as it stands in terms of the so-called equitable distribution bill (Senate Bill No. 6174-A— Assembly Bill No. 6200-A) passed by the State Legislature on June 3, 1980 and signed by the Governor on June 19, 1980, to take effect on July 19, 1980, must be taken into consideration. Plaintiff’s action currently stands in the category of an action or proceeding commenced prior to the date on which the new law took effect. Therefore, with respect to the possible award of any alimony the plaintiff’s case clearly comes under part A of section 236 of the Domestic Relations Law which expressly precludes an award of alimony to a spouse whose proven misconduct would itself constitute grounds for separation or divorce. Therefore, defendant, assuming he were successful on his counterclaim, would not be required by the court to pay plaintiff any alimony. On an action brought subsequent to *682 July 19, 1980 it is noted that there is no specific expression regarding fault set forth in section 236 (part B, subd 6, par a) of the Domestic Relations Law, except to the extent that fault might be construed under certain circumstances as a factor under clauses (9) and (10) thereof. Therefore, there would be obvious prejudice to the defendant in the discontinuance of the action by the plaintiff.
Severe prejudice to the defendant is also implied, in that reference is made to the so-called equitable distribution law recently adopted by the New York State Legislature. The papers reflect, in defendant’s view at least, that plaintiff wishes to discontinue her present cause of action and renew same so that she will be entitled to the benefits of the new law, particularly the equitable distribution of all marital property. Although plaintiff denies this, the court notes plaintiff’s use of language in her moving papers that is rather pointed in terms of the new law, wherein she states that "your deponent is entitled to a division of the marital property as I have worked from the moment that defendant became a medical doctor and I have helped him throughout his career”. The defendant, on the other hand, appears to wish to maintain the present action so that he does not come under the equitable distribution of property provisions of the law. In terms of the equitable distribution of property and distributive award aspects of the new law only, the court sees no prejudice to either party by a discontinuance, nor does it see an advantage gained to either party by a denial of discontinuance. In the court’s view section 236 (part B, subd 5) of the Domestic Relations Law (Disposition of property in certain matrimonial actions) applies to actions commenced prior to the effective date in which judgment was not made, and which are still pending, such as the case at bar.
The new law as enacted contains certain "special controlling” provisions which are worthy of consideration.
Section 236 for example provides, in pertinent part, as follows: "Special controlling provisions; prior actions or proceedings * * * Except as otherwise expressly provided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective and the provisions of part B shall be controlling with respect to any action or proceeding commenced on or after such effective date. Any reference to this section or *683 the provisions hereof in any action, proceeding, judgment, order, rule or agreement shall be deemed and construed to refer to either the provisions of part A or part B respectively and exclusively, determined as provided in this paragraph any inconsistent provision of law notwithstanding.” (Italics supplied.)
Clearly, then, part A controls with respect to any action or proceeding commenced prior to the effective date of the law, while part B controls with respect to any action or proceeding commenced on or after said effective date except as otherwise expressly provided in this section. An expressly provided exception, as to the application of part B appears in subdivision 2 of part B which provides in pertinent part as follows: "Matrimonial actions. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for * * * a divorce * * * commenced on and after the effective date of this part.”
Reading the opening paragraph of section 236 which deals with "Special controlling provisions” and subdivision 2 of part B of said section 236 it would appear that the Legislature has carved out subdivision 5 from part B and made that particular subdivision applicable as of July 19, 1980, the effective date of the law, so that subdivision 5 is controlling even as to actions or proceedings pending on July 19, 1980. Subdivision 5 requires the court, except where there is in effect a separation agreement pursuant to subdivision 3 of part B, to determine the respective rights of the parties in their separate or marital property, and to provide for the disposition thereof in the final judgment. In other words, on or after July 19, 1980, all actions pending on or after said date, or commenced on or after said date, become subject to the equitable distribution features of the law.
That this is so appears not only from the express language of the statute, but also follows logically and philosophically, in order to achieve equity. After all the new law represents reform, in large part, in the area of matrimonial law, wherein certain deficiencies in the old law are sought to be cured. It makes little sense to suggest that an arbitrary line would be drawn so as to refuse the principles of equitable distribution to those cases which have not yet reached judgment and are in a pending status. It does make sense not to apply the concept of equitable distribution of property to those cases which have reached judgment. To attempt to apply equitable *684 distribution of property principles to cases which were concluded to judgment when the new law came into effect would create havoc and chaos. A review of many of our sister States which have equitable distribution reflects that the cutoff was at the point where judgment had been made or entered, applying the principles of equitable distribution to all pending cases as well as those actions commenced on or after the effective date of the new law.
This court is of the belief the Legislature intended retroactive application of section 236 (part B, subd 5) of the Domestic Relations Law as to pending cases. Prior bills submitted in the Senate and Assembly (i.e., S6174, A6200 — 1979-1980 Regular Sessions, respectively dated May 23, 1979 and March 21, 1979) do not contain the "Special controlling provisions” of section 236, nor the exceptions contained in section 236 (part B, subds 2, 5) in the legislation adopted on June 3, 1980.
Therefore, this court holds that the equitable distribution and distributive award aspects of the new law insofar as subdivision 5 of part B of section 236 of the Domestic Relations Law is to be applied retroactively. The effect of the entire section 236 (part B, subd 5) of the Domestic Relations Law after July 19, 1980 is to make eligible for distribution property which prior to the act could not have been subjected to such treatment. In this respect the court holds that the statute is constitutional and does not constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the New York State Constitution.
The court notes that all retrospective statutes are not unconstitutional. A traditional formulation of the applicable rule states that retroactive legislation is constitutionally offensive only to the extent that it modifies or abrogates "vested rights”.
A retroactive statute is defined as one which takes away or impairs vested rights; it is a law which looks backward affecting acts occurring or rights accuring before it came into force. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 51, subd a.) Generally statutes are construed as prospective unless the language of the statute, either expressly, or by necessary implication, requires that it be given a retroactive construction. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 51, subd b.) The new law amends prior law and as such is an amendatory statute which generally will have prospective *685 application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall have a contrary interpretation. In this regard see section 236 of the Domestic Relations Law regarding "Special controlling provisions” and section 236 (part B, subd 2) which provides the express language giving subdivision 5 of part B control over pending cases, thereby having retroactive effect.
That the new law is remedial is clear from the memorandum filed with the bill when it was signed into law by the Governor. Said memorandum stated in part, "The sponsors of this legislation and their predecessors have worked since 1974 to achieve divorce reform in New York. This bill accomplishes that goal, and represents the most sweeping reform of the divorce laws in this State since the Divorce Reform Act of 1966.” (1980 McKinney’s Session Laws of NY, p 1863.)
It should be noted that "Remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 54, subd a.) However, the term "vested right” is conclusory — a right is vested when it has been so far perfected that it cannot be taken away by statute. (Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv L Rev 692, 696.) As it was stated in the Supreme Court of New Jersey in reviewing its equitable distribution law in 1974 on this point in Rothman v Rothman (65 NJ 219, 225-226): "A state may, in the exercise of the police power, enact a statute to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual’s right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired. Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L.Ed. 940 (1934); Home Building & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L.Ed. 413 (1934); Day-Brite Lighting, Inc. v. Missouri, 342 U. S. 421, 72 S. Ct. 405, 96 L.Ed. 469 (1952) * * * In these cases, as in many others as well, the court has, after examining the importance of the public interest served by the statute and comparing it with and balancing it against the quality and value of the right affected by the retroactive legislation, *686 reached the conclusion that the state statute in question represented a valid exercise of the police power, despite the fact that in each case there was some clear incursion upon individual private rights. See Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, supra, 73 Harv. L. Rev. at 697 et seq. * * * 'The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.’ [Nebbia v. New York, supra, 291 U. S. at 525.]”
The history of some of our sister States under equitable distribution is of interest, For example, it has been held that equitable distribution of property provisions of amended divorce acts were not unconstitutional insofar as they applied to marriages and separate estates created prior to the effective date of the amendment. (Scalingi v Scalingi, 65 NJ 180.) The equitable distribution law has also withstood the challenge that it constitutes a denial of the equal protection of the laws in New Jersey. (Chalmers v Chalmers, 65 NJ 186; Rothman v Rothman, supra.)
It has also been recognized and upheld that traditional property rules do not apply as between the parties, and the trial court instead will be required to distribute marital property in an equitable manner, taking into account all relevant factors, and its decision will not be reversed absent an abuse of discretion. (Matter of Fleming v Fleming, 80 Ill App 3d 1006.)
In New York State it has generally been held in the retroactive application of statutes affording new ground for divorce, that such application of divorce statutes is not unconstitutional. (See Walker v Walker, 155 NY 77; Smith v Smith, 55 Misc 2d 172; Packer v Packer, 55 Misc 2d 74.)
Even without the express language contained in section 236 (Special controlling provisions) and subdivisions 2 and 5 of part B of said section 236, this court holds that the equitable distribution and distributive award aspects of subdivision 5 apply to pending actions as well as those commenced on or *687 after July 19, 1980. To do otherwise would do inequity to those parties with pending actions.
Furthermore, it was not the intention of the Legislature to create an additional climate of stress and strain on those residents of this State who already were undergoing the traumatic experiences of marital discord by creating an artificial cutoff date as to the equitable distribution of marital property, nor was it their intention to once again return to the predivorce reform era of perjured testimony and affidavits in order that a spouse, and in effect oftentimes the children, may have his or her day in court to seek an equitable distribution of marital property.
An amended State Assembly memorandum dated July 1, 1980 in connection with the passage of the new law reflects the basic premise for marital property reform, wherein the modern marriage is legislatively recognized and viewed as a form of partnership. The clear import of the language in the memorandum further demonstrates the equitable necessity for applying section 236 (part B, subd 5) of the Domestic Relations Law to pending actions as well as those commenced on or after July 19, 1980 in that it provides in part as follows:
“Upon the dissolution of marriage there should be an equitable distribution of all family assets accumulated during the marriage * * *
“An important aspect of this legislation is the flexibility which is incorporated due to the tremendous variation in marital situations and the equities involved. Flexibility, rather than rigidity is essential for the fair disposition of a given case.” (NY Legis Ann, 1980, p —.)
The plaintiff’s motion to discontinue her action, is denied at this time. Plaintiff may chose to go forward with her case at trial, or she may decline to put in any evidence at all, as she may be advised. The denial of plaintiff’s motion herein is without prejudice to renewal of same following disposition of defendant’s case should he proceed and fail to obtain judgment on his counterclaim.
Leave shall be given freely to amend pleadings upon such terms as may be just. (CPLR 3025; Smith v Smith, supra.) As can be seen from the above there is no prejudice at this stage of the proceedings to permit defendant to amend his answer as proposed. Accordingly, defendant’s motion to amend, is granted. Said answer shall be deemed amended upon service on plaintiff’s attorney of a copy of the order to be *688 submitted herein. Plaintiff shall have 20 days from the date of said service to reply to said amended answer and counterclaim.