OPINION OF THE COURT
Morrie Slipkin, J.
In an action for divorce, wherein defendant has counterclaimed for a separation, plaintiff moves for leave to withdraw her cause of action without prejudice.
The genesis of this motion lies in the amendment to the Domestic Relations Law and related statutes (L 1980, ch 281). Plaintiff’s attorney candidly and unequivocally states that the purpose of the discontinuance is to enable plaintiff to commence a new action whereunder she could seek an equitable division of marital property. Whereas the preamendment statute was drafted in accordance with rules of title, the amended statute adopted the concept of marriage as a partnership and authorizes judicial distribution of marital property in accordance therewith rather than necessarily in accordance with title. Informal assessment of the consensus of opinion among practitioners in the field of matrimonial law indicates agreement that the amendment will be beneficial to wives in the majority of cases.
Of preliminary importance is the issue of whether the parties hereto are correct in their reading of the statute. Each accepts the conclusion that plaintiff can obtain equitable distribution of marital property pursuant to the amendment, if at all, by commencing an action after July 19, 1980, the effective date of the statute. For reasons discussed hereinafter, this court is in agreement with them.
Section 236 of the Domestic Relations Law, as amended, is divided into part A, which is entitled "Prior Actions or Proceedings” and part B which is entitled "New Actions or Proceedings”. It is in subdivision 5 of part B that the equitable distribution provisions are found. Section 236 begins by stating that "Except as otherwise expressly provided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective [July 19, 1980] and the provisions of part B shall be controlling with respect to any action or proceeding *691 commenced on or after such effective date.” (Emphasis supplied.)
The court has read the amended statute in its entirety and nowhere finds an express provision whereby the equitable distribution provisions of part B will apply to actions commenced before July 19, 1980. In fact, there is an express provision in subdivision 2 of part B which is designed to ensure that certain part A litigation does not come under the principles of part B: "Any application which seeks a modification of a judgment, order or decree made in an action commenced prior to the effective date of this part shall be heard and determined in accordance with the provisions of part A of this section.” While this sentence is not determinative with respect to the preliminary question posed by the court, it does supply the subject matter for the otherwise enigmatic "Except as otherwise expressly provided in this section”.
The court has dealt at length with this issue, raised by neither party, because of the decision of Mr. Justice Mc-Caffrey in Deschamps v Deschamps (103 Misc 2d 678). In Deschamps, defendant moved to interpose a counterclaim and plaintiff cross-moved to discontinue. In granting defendant’s motion and denying plaintiff’s cross motion, Special Term held that section 236 (part B, subd 5) of the Domestic Relations Law, the equitable distribution provision, was applicable to any action commenced prior to the effective date of the statute where judgment had not been made or entered and where the action was still pending. The rationale underlying this conclusion is best taken verbatim from Special Term’s decision (supra, p 683):
"Clearly, then, part A controls with respect to any action or proceeding commenced prior to the effective date of the law, while part B controls with respect to any action or proceeding commenced on or after said effective date except as otherwise expressly provided in this section. An expressly provided exception, as to the application of part B appears in subdivision 2 of part B which provides in pertinent part as follows: 'Matrimonial actions. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions * * * a divorce * * * commenced on and after the effective date of this part.’
"Reading the opening paragraph of section 236 which deals with 'Special controlling provisions’ and subdivision 2 of part B of said section 236 it would appear that the Legislature has *692 carved out subdivision 5 from part B and made that particular subdivision applicable as of July 19, 1980, the effective date of the law, so that subdivision 5 is controlling even as to actions or proceedings pending on July 19, 1980. Subdivision 5 requires the court, except where there is in effect a separation agreement pursuant to subdivision 3 of part B, to determine the respective rights of the parties in their separate or marital property, and to provide for the disposition thereof in the final judgment. In other words, on or after July 19, 1980, all actions pending on or after said date, or commenced on or after said date, become subject to the equitable distribution features of the law.”
This court cannot agree with the above-quoted analysis. There is no express provision holding in the manner found by the court in Deschamps. The provision was inferred by the court as being intended by the Legislature, as being implicit in the statute. Since the express language of the draftsman allows only for an express exception to the general rule, application of deductive reasoning to uncover as intended, but unexpressed, provision is precluded.
More important than this technical objection to the Deschamps reasoning is the fact that it misreads subdivision 2 of part B. The reference therein to an express exception in subdivison 5 has nothing to do with express exceptions referred to in the prefatory language of section 236 dealing with "controlling provisions”. Rather, the exception deals with elimination of equitable distribution by the court where the parties have agreed to disposition of the marital property: "Except where the parties have provided in an agreement for the disposition of their property pursuant to subdivision three of this part, the court * * * shall determine the respective rights of the parties in their separate or marital property”. (§ 236, part B, subd 5, par a.) Thus, when subdivision 2 of part B states "Except as provided in subdivision five of this part, the provisions of this part [B]” shall apply to a detailed list of types of action "commenced on and after the effective date of this part”, it is inappropriate to add thereto that subdivision 5 will apply to all pending matrimonial actions. It is clear that subdivision 2 is merely taking cognizance of the exception in subdivision 5. The interpretation reached in Deschamps ignores the language "Except as provided in subdivision five”, replaces such language with the equivalent of "except for the provision of subdivision 5” and adds thereto "then in such *693 case the provision of subdivision 5 shall apply to actions brought before the effective date of the statute and still pending.” In this court’s opinion the result is an unwarranted judicial revision of the legislation.
The Deschamps opinion states that the holding would be the same even if there was no "express language” upon which to rely because it would be inequitable to do otherwise. With this the court must also disagree. The flexible, modern approach envisioned by the new legislation is encompassed in all the provisions of part B. To excise subdivision 5 and apply it along with the provisions of part A to divorces commenced prior to July 18, 1980 is to create a hybrid unmentioned in the legislation. Far from equitably applying the entire gamut of the tools provided by part B, it merely takes one of those tools and adds it to part A. This court is not convinced that this neither fish-nor-fowl approach is more equitable than is application of the literal language of the statute.
The issue then becomes whether plaintiff is entitled to seek the presumed benefits of the new legislation by discontinuing the present action. CPLR 3217 (subd [b]) provides that where there is no stipulation with respect thereto, and where an answer has been served, "an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper.” The courts have taken a liberal approach with respect to discontinuance motions, allowing them except where "substantial rights have accrued or his adversary’s rights would be prejudiced thereby.” (Louis R. Shapiro, Inc. v Milspemes Corp., 20 AD2d 857.) It is a general rule that, absent this prejudice, a party may discontinue his action at any time before the issues have been submitted to the fact finder (Schintzuis v Lackawanna Steel Co., 224 NY 226). Thus, a plaintiff was allowed to discontinue his equitable action, commence an action at law based on the same transaction, and thereby obtain the tactical advantage of much broadened pretrial discovery (Laxer v Bergen & Zaager, 178 Misc 391, affd 264 App Div 710). In Bateholts v Russell (35 AD2d 761), infant plaintiffs were allowed to discontinue their lawsuit until termination of their mother’s suit in order to take possible advantage of a change in the common law as to intrafamily torts which change had come about by Court of Appeals decision after the infants’ suit had commenced. These cases illustrate that the broadening of *694 the plaintiffs rights by virtue of the discontinuance does not per se constitute a legally cognizable prejudice to defendant.
On the other hand, where the discontinuance is sought to bypass prior court orders, it will not be allowed, since substantial rights of defendant will be thereby adversely affected (e.g., Stanford v Cayuga Linen & Cotton Mills, 261 App Div 877; Schneider v Schneider, 32 AD2d 630). Where the discontinuance is sought so as to escape an imminent trial loss, it will not be permitted (Getz v Harry Silverstein, Inc., 205 Misc 431).
Thus, where there is no prejudice to defendant, the discontinuance will be granted almost as a matter of right. Where there is prejudice, but such prejudice is curable by the imposition of appropriate conditions, then the discontinuance will be conditionally allowed. It is only where the prejudice cannot be cured, where the defendant’s deprived rights cannot be restored, that discontinuance will be denied.
An interesting case with more than a little resemblance to the one in issue which illustrates the above distinctions is Plohn v Plohn (282 App Div 1107). In that case, Special Term had allowed plaintiff leave to discontinue her divorce action and commence a separation action upon condition that she pay back $7,500 of the $15,000 counsel fees previously awarded to her, that she pay $1,157.95 in taxable costs and disbursements and that she pay the referee’s fees and disbursements in the amount of $1,417.50. The Appellate Division reversed (supra, p 1107), denied the discontinuance and held that the facts disclosed that plaintiff could not comply with the conditions because she did not have the money: "While ordinarily the right of a plaintiff to discontinue an action can hardly be disputed, we think this principle does not apply where a plaintiff has set in motion an action for divorce and obtained a very substantial counsel fee to prosecute the same. We are mindful that the plaintiff cannot be compelled to prosecute her divorce action to judgment and a refusal on her part to do so may result in a dismissal that may not be on the merits, but if she elects to permit a dismissal then she must take her chances as to whether or not she will obtain any counsel fees in a subsequent action for separation.”
The above case is distinguishable from the one herein in that it involved a severe monetary loss to defendant which could not be corrected by imposition of practical condition. In the present case, the trial court, through application of the *695 provisions of part B, will be able to ameliorate whatever temporary monetary losses defendant will have suffered, if any, by virtue of a discontinuance and subsequent new action. Plohn makes clear that imposition of monetary conditions at this point would be improvident.
Also worthy of note is the fact that the Appellate Division in Plohn recognized that denial of the discontinuance did not deny to plaintiff the utlimate relief sought for; it merely made it more difficult and costlier. In any event, the obvious prejudice to defendant, that of loss of money, can be corrected by the trial court. Although defendant alleges prejudice by virtue of frustration and delay, these are not the forms of prejudice which the law recognizes. If they were, discontinuance could never be granted. As previously discussed, the benefits theoretically befalling plaintiff by virtue of the amended statute cannot be collectively construed as concomitant prejudice to defendant justifying denial of the plaintiff’s motion.
For the foregoing reasons, the motion for leave to discontinue the plaintiff’s action without prejudice is granted. Defendant’s counterclaim shall be severed from the discontinued action.
In effect, the counterclaim will be considered under part A and the recommenced action, if and when brought, will be considered under part B. Even if these disparate claims are considered at the same time, the court sees no prejudice to either side since there can be no dual judgment.
In the event that the counterclaim were for divorce, a different result might have to prevail. Part A and the case law developed under section 236 of the Domestic Relations Law would preclude either spouse from alimony in the event of a dual divorce; no such prohibition as to maintenance and distribution of property appears in part B. It would seem to this court, therefore, that if the counterclaim were for divorce, then the discontinuance of the complaint would be conditioned upon the counterclaim being tried before the new action. In other words, there could be no dual divorce which would deprive defendant of the rights to which part A entitled him. Admittedly, this discussion is academic. However, it serves as a warning that the decision herein is based upon the individual facts of this case and should not be looked upon as an absolute rule to be utilized in all cases.