*1030 OPINION OF THE COURT
James H. Boomer, J.
In September, 1977, the husband commenced this divorce action. Within 20 days thereafter the wife answered and counterclaimed for divorce. By this motion under CPLR 3217 the wife seeks an order discontinuing her counterclaim. Concededly, the reason for the request is that the wife is confident she will defeat her husband’s action for a divorce and having done so she intends to reinstitute an action for divorce and thus take advantage of the equitable distribution provisions of the recent amendments to the Domestic Relations Law which became effective on July 19 of this year.
In the alternative, defendant, citing Deschamps v Deschamps (103 Misc 2d 678), seeks a determination that those provisions of the new statute relating to equitable distribution apply to actions pending before the effective date.
I disagree with the determination in Deschamps v Deschamps (supra) that section 236 (part B, subd 5) of the Domestic Relations Law applies to actions pending before the effective date of the amendment. The first sentence of the opening paragraph of new section 236 of the Domestic Relations Law (L 1980, ch 281) provides: "Except as otherwise expressly provided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective and the provisions of part B shall be controlling with respect to any action or proceeding commenced on or after such effective date.”
Subdivision 2 of part B does not "carve out” subdivision 5 from part B as the Deschamps decision (supra, p 683) suggests. Subdivision 2 of part B refers to the types of matrimonial actions to which part B applies. Except for subdivision 5, which provides for disposition of property, part B applies to all matrimonial actions including divorce, annulment, and separation, whether the marriage is dissolved or not. Thus, maintenance and child support may be granted in a separation action and it also may be granted in a divorce action even though a divorce is not granted. Subdivision 5 applies only to those matrimonial actions where the marriage is dissolved or declared void ("wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage”, etc.). Thus, a party who obtains a *1031 separation or is unsuccessful in a divorce or annulment action may be awarded maintenance and child support, but he or she may not obtain equitable disposition of property; that must await the dissolution of the marriage.
Subdivision 5 of part B does not expressly state that it applies only to actions or proceedings commenced prior to the effective date of the statute. Subdivision 2 of part B, however, does specifically state that it applies to actions and proceedings commenced after the effective date.
There is a reason why subdivision 2 of part B repeats the language of the opening sentence of section 236 of the Domestic Relations Law (that the provisions of part B control actions commenced on or after the effective date) while subdivision 5 of part B does not. Subdivision 2 of part B, which applies to applications for maintenance and child support, also provides for the modification of existing alimony and child support orders, but it specifically states that part A of section 236 of the Domestic Relations Law controls modifications of orders made in proceedings instituted before the effective date. Section 236 (part B, subd 5) of the Domestic Relations Law does not contain provisions relating to modification of existing orders or decrees. This is logical since, unlike maintenance and child support, the disposition of property is final and not subject to modification. Since there is no need in subdivision 5 to distinguish between original actions and proceedings and applications for modification of decrees in prior actions, there is no need in that subdivision to repeat the language of the first sentence of section 236 and to refer to the effective date.
The Deschamps opinion (103 Misc 2d 678, supra) seeks to read an exception into subdivision 5 by implication. This may not be done, for any exception to the opening sentence of section 236 of the Domestic Relations Law must be "expressly provided”. Since subdivision 5 does not otherwise expressly provide, it is controlled by the first sentence of section 236 and it applies only to actions commenced on or after the effective date.
The issue remaining to be decided is whether defendant wife is entitled to discontinue her counterclaim for divorce for the purpose of bringing an action for divorce under the new equitable distribution law. CPLR 3217 (subd [b]) provides that after service of a responsive pleading or within 20 days after service of the pleading asserting the claim "an action shall not be discontinued by a party asserting a claim except upon *1032 order of the court and upon terms and conditions, as the court deems proper.”
While ordinarily a litigant will be permitted to discontinue, such discontinuance will not be allowed where substantial rights have accrued or where an adversary’s rights would be prejudiced thereby (Louis R. Shapiro, Inc. v Milspemes Corp., 20 AD2d 857; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3217.06; 7 Carmody-Wait 2d, § 47.12).
Prejudice sufficient to bar discontinuance has been found where a party is attempting to circumvent a prior order of the court (Schneider v Schneider, 32 AD2d 630; Conklin v Wilbur, 26 AD2d 666; Schultz v Kobus, 15 AD2d 382; Smith v Smith, 62 Misc 2d 574; Harley v Harley, 19 Misc 2d 74). Additionally, courts have denied a discontinuance where the moving party seeks to obtain benefits in a new action denied in the existing action (Katz v Austin, 271 App Div 217; ABC Wholesale Florists v Spanakos, 124 NYS2d 167), or where a party seeks to avoid the likelihood of an adverse decision (Landsman v Landsman, 278 App Div 214; Van Aalten v Mack, 17 Misc 2d 828; Getz v Harry Silverstein, Inc., 205 Misc 431; Gilstein v Gilstein, 23 AD2d 678).
Defendant, in support of her application to discontinue, relies principally upon the case of Cooper v Cooper (103 Misc 2d 689). There, Justice Slifkin held that there would be no prejudice to a husband if the wife were permitted to discontinue her action for divorce so that she could reinstitute it after the effective date of the equitable distribution law and thus obtain the benefits of that law. In support of this determination Justice Slifkin cited Laxer v Bergen & Zaager (178 Misc 391, affd 264 App Div 710) and Bateholts v Russell (35 AD2d 761) and he commented that "These cases illustrate that the broadening of the plaintiff’s rights by virtue of the discontinuance does not per se constitute a legally cognizable prejudice to defendant.” (Cooper v Cooper, supra, pp 693-694.) In Laxer (supra) the plaintiff was permitted to discontinue his action and reinstitute it so that he could obtain a procedural advantage of broader pretrial discovery. In Bateholts (supra) again the plaintiffs were permitted to discontinue so they might gain a procedural advantage. There the infant plaintiffs who with their mother and passengers received injuries while riding in their father’s automobile, were allowed to discontinue their actions brought against the driver of another automobile that collided with their father’s. The mother had *1033 also sued the other driver in a separate action. Before these actions were reached for trial the Court of Appeals in Gelbman v Gelbman (23 NY2d 434) abolished the intrafamily tort immunity and specifically held that it was to be applied retroactively to pending actions.
The infant plaintiffs sought the discontinuance so they could bring a new action not only against the other driver but against their father as well. Under the Gelbman case (supra), rather than discontinue their actions, the infants could have amended their complaints and brought in their father as an additional party and both the mother’s action and the infants’ actions could have been tried together. The infants contended that they would be prejudiced by a joint trial since the mother’s action would only be against the other driver and not also against the husband (the husband’s liability insurance policy did not provide coverage for injuries to a wife), and the infants’ actions would be against both the other driver and their father. It was held by the court that this would be confusing to the jury and most likely would require an explanation to the jury of the exclusion provision in the husband’s liability policy.
The facts in the Bateholts case (supra) indicate the discontinuance of the infants’ actions did not give the plaintiffs any new right that they did not already have under the Gelbman case (supra). The discontinuance only provided the plaintiffs with a procedural advantage, or more accurately corrected a procedural disadvantage. Moreover, the discontinuance did not change any substantial right that the defendant (the other driver) enjoyed; at most it subjected him to two trials, a procedural disadvantage every defendant faces when a court, for good cause, denies a motion for a joint trial or consolidation.
There is a distinct difference between the effect upon a party resulting from a procedural change in the law and the effect resulting from a change in the substantive law which subjects a party to enhanced liability, or deprives him of substantial antecedent rights. The courts, in discussing the retroactive effect of statutes, have distinguished between procedural statutes and those which interfere with existing rights or create liability where none previously existed (Shielerawt v Moffett, 294 NY 180; McKinney’s Cons Laws of NY, Book 1, Statutes, § 55). "The general rule is that New York uniformly applies procedural statutes such as the one involved here *1034 retroactively inasmuch as they merely liberalize existing procedural aspects of the law, whereas they in no way enlarge or extend the liability of the defendant.” (Muraco v Ferentino, 42 Misc 2d 104,105.)
Here the plaintiff husband has substantial substantive rights which will be seriously impaired if the wife is allowed to discontinue her cause of action. Under long-established principles of property law the husband had the right upon divorce to retain property he purchased in his own name even if that property was purchased during the marriage. The equitable distribution law acts to substantially impair this property right. Property acquired during the marriage becomes not the separate property of the person who acquires and holds title to it; but it becomes "marital property” and the other spouse acquires an interest in it upon divorce. But the statute effecting this change only applies when the marriage is dissolved in actions instituted on or after July 19, 1980; it does not apply to actions previously instituted. The change in existing law was dramatic and the Legislature recognized the substantial adverse effect or prejudice the statute could have upon the property rights of married parties and, therefore, made the change apply prospectively to actions instituted on or after the effective date. If the Legislature had felt that the effect of the equitable distribution law upon a party to a divorce action would be so unsubstantial that it would not seriously prejudice existing rights, it could have applied the law to pending actions. It did not do so and the courts should not do by indirection what the Legislature has refused to do directly. (See Katz v Austin, 271 App Div 217, 218, holding that plaintiffs could not discontinue an action and thereby "do indirectly what they are not permitted to do directly.”)
To allow the discontinuance of pending divorce actions can work not only to the prejudice of a wage earning spouse who holds title to property in his or her own name, but also to the prejudice of a homemaker spouse who has an interest in the marital residence as a tenant by the entirety or is the sole owner of property acquired during the marriage. Assume that he or she has not contributed to the purchase price of the property and that the marriage was of short duration. In the absence of the equitable distribution law he or she would be entitled, upon dissolution of the marriage, to a one-half interest in the property held as a tenant by the entirety and would *1035 retain full title to the property held in his or her own name. Under the equitable distribution law these property rights will be seriously prejudiced. Upon the dissolution of the marriage in an action instituted after the effective date of that law, he or she may well retain only a small percentage interest in that property.*
Since I find that discontinuance of the wife’s counterclaim for divorce to permit her to institute a new action after the effective date of the equitable distribution law will substantially prejudice the existing property rights of the plaintiff, I deny the motion to discontinue.

 See section 236 (part B, subd 1, pars c, d; subd 5) of the Domestic Relations Law. Marital property means property acquired by either or both spouses during the marriage regardless of the form in which title is held and it shall be equitably distributed based in part upon the duration of the marriage and the contribution made by each of the parties.