STEVEN VALLADARES, Respondent, v ANNE B. VALLADARES, Appellant. (Action No. 1.)

VIRGINIA S. WHITE, Respondent, v WILLIAM H. WHITE, Appellant. (Action No. 2.)

JEANETTE TUCKER, Respondent, v SPENCER TUCKER, Appellant. (Action No. 3.)

Second Department, May 4, 1981

**APPEARANCES OF COUNSEL**

*Jacob Rabinowitz (Daniel D. Abramtsov* of counsel), for Anne B. Valladares, appellant.

*Bronstein & Davis (Jay J. Davis* of counsel), for Steven Valladares, respondent.

*Anderson Russell Kill & Olick, P. C. (Arthur S. Olick* and *Maria P. Sperando* of counsel), for William H. White, appellant.

*Lowenthal Landau Fischer & Singer, P. C. (Barry H. Singer* of counsel), for Virginia S. White, respondent.

*Joel R. Brandes, P. C.,* for Spencer Tucker, appellant.

*Koopersmith, Feigenbaum & Potruch (Kenneth Kooper-smith, Alexander Potruch, Michael K. Feigenbaum* and *Bernard E. Stamler* of counsel), for Jeanette Tucker, respondent.

### OPINION OF THE COURT

TITONE, J. P.

■ These appeals, argued together, present common questions as to the retroactivity of the newly enacted part B of section 236 of the Domestic Relations Law (L 1980, ch 281) to matrimonial actions and proceedings commenced prior to its effective date, July 19, 1980. In our opinion, the retroactive application of this new statutory scheme to marriages contracted and property acquired prior to July 19, 1980 does not offend constitutional requirements of due process and equal protection of the laws. However, as a matter of statutory construction, the new provisions are inapplicable to matrimonial actions and proceedings, as defined in part B of section 236, which were commenced prior to July 19, 1980. We also conclude that, with respect to matrimonial actions commenced prior to July 19, 1980, an application for leave to discontinue without prejudice (see CPLR 3217, subd [b]), may not be granted where the purpose of such application is to enable the moving party to circumvent the intent of the Legislature by commencing a new action on or after that date.

### I. THE STATUTE INVOLVED

At issue here is the applicability of part B of section 236 of the Domestic Relations Law, which has been termed "the most sweeping reform of the divorce laws in this State since the Divorce Reform Act of 1966" (see Governor's Memorandum, McKinney's Session Laws of NY, 1980, p 1863).

Section 236 of the Domestic Relations Law, as amended by section 9 of chapter 281 of the Laws of 1980, has two parts: A and B. Part A is substantially similar to former section 236 of the Domestic Relations Law (see L 1968, ch 699), which authorized the award of alimony in matrimonial actions. The amendment rendered those provisions explicitly gender-neutral. Part B sets forth an entirely new scheme for the equitable distribution of "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" (Domestic Relations Law, § 236, part B, subd 1, par c).

Further, the amended section 236 includes "special controlling provisions", which provide, in pertinent part: "Except as otherwise expressly provided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective and the provisions of part B shall be controlling with respect to any action or proceeding commenced on or after such effective date."

The effective date of the amendments was July 19, 1980 (L 1980, ch 281, § 47).

## II. FACTS

In each of the cases before us, an action for divorce was commenced prior to July 19, 1980, and thereafter one of the parties took steps to bring the action within the ambit of part B of section 236 of the Domestic Relations Law.

In the case of Steven Valladares against Anne Bernadette Valladares, plaintiff commenced an action for divorce on or about April 2, 1980. In the complaint, the plaintiff husband accused the defendant wife of cruel and inhuman treatment. On or about April 15, 1980, defendant served a verified answer, in which she alleged adultery as an affirmative defense. In September, 1980 plaintiff amended his complaint in order to assert a cause of action for adulteries allegedly committed by defendant in June, 1980. Thereafter, defendant moved to amend her answer to assert a demand for divorce on the ground of the adultery alleged

in her affirmative defense, and to assert a demand for equitable distribution of property pursuant to part B of section 236 of the Domestic Relations Law, and for experts' fees. In the order appealed from, Special Term granted defendant leave to amend her answer to assert a counterclaim for divorce, but otherwise denied her application. Special Term held that part B of section 236 did not apply to the action because it was commenced prior to July 19, 1980.

In the case of Virginia S. White against William H. White, plaintiff commenced an action for divorce in November, 1979. In her complaint she alleged causes of action for cruel and inhuman treatment and constructive abandonment. Defendant served a verified answer in December, 1979. Pretrial discovery with respect to financial matters was completed and the action was noticed for trial. On the eve of trial, plaintiff dismissed her attorney. Thereafter, in a motion returnable September 12, 1980, defendant moved to amend his answer to assert counterclaims for divorce. Plaintiff cross-moved, pursuant to CPLR 3217 (subd [b]), for leave to discontinue the action "so that I may commence a new action whereby I can seek to avail myself of the provisions of the recent amendments to the Domestic Relations Law, effective as of July 19, 1980, relating to the equitable division of marital property." In the order appealed from, entered September 26, 1980, Special Term granted plaintiff's cross motion to discontinue the action, and denied defendant's motion to amend his answer "with leave to defendant to assert the same in the new action which shall be promptly instituted by plaintiff."

In the case of Jeanette Tucker against Spencer Tucker, plaintiff commenced an action for divorce on or about December 12, 1978, by service of a summons. Thereafter, on January 16, 1979, plaintiff served a verified complaint in which she alleged cruel and inhuman treatment and sought, inter alia, a divorce and a judgment impressing a constructive trust upon the assets obtained by defendant during the course of the marriage. On or about February 12, 1979 defendant served a verified answer, denying the essential allegations of the complaint. Although the case was noticed for trial in April, 1980, trial was adjourned in

contemplation of a negotiated settlement of the litigation. During the negotiations, which ended in a stalemate, defense counsel anticipated that plaintiff "would attempt 'something' in order to try to come under the new 'Equitable Distribution' Law." To avert this possibility, defendant commenced a separate action for divorce by service of summons dated July 3, 1980. Plaintiff filed a notice of appearance in that action on or about July 23, 1980. Then, in August, 1980, plaintiff moved pursuant to CPLR 3217 (subd [b]) for leave to discontinue her action for divorce or, in the alternative, for leave to amend her complaint to include a demand for equitable distribution of property. In her affidavit in support of the motion, plaintiff candidly acknowledged that she wanted to discontinue her action and commence a new action in order to avail herself of the new law permitting the equitable distribution of property. Defendant cross-moved to amend his answer to assert a counterclaim for divorce. Special Term granted plaintiff's motion for leave to discontinue without prejudice, and denied as moot defendant's cross motion to amend his answer.

### III. RETROACTIVITY

Defendant Anne Bernadette Valladares contends that section 236 (part B, subds 2, 5) of the Domestic Relations Law authorize the application of part B to all actions pending on July 19, 1980, if all or part of the relief granted is one of the forms of relief specified in subdivision 5 (see *Deschamps v Deschamps*, 103 Misc 2d 678, 682-684). Subdivision 2 provides, in pertinent part: "Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for an annulment or dissolution of a marriage, for a divorce, for a separation, for a declaration of the nullity of a void marriage, for a declaration of the validity or nullity of a foreign judgment of divorce, for a declaration of the validity or nullity of a marriage, and to proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, *commenced on and after the effective date of this part*" (emphasis supplied). Subdivision 5, which authorizes the equitable distribution of marital property, limits its applicability to "an action wherein all or part of the relief

granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, and in proceedings to obtain a distribution of marital property following a foreign judgment of divorce". Thus, the caveat in subdivision 2, to wit, "[e]xcept as provided in subdivision five of this part," merely serves to clarify that equitable distribution of marital property is only authorized upon the termination of the marital relationship, by divorce, dissolution, annulment, or declaration of the nullity of a marriage (see *Cooper v Cooper*, 103 Misc 2d 689, 691).

 Further, since subdivision 5 is not "expressly" applicable to *all* actions pending on July 19, 1980, including actions commenced prior to July 19, 1980, defendant's contention flies in the face of the "special controlling provisions" of section 236 of the Domestic Relations Law, which provide: "Except as otherwise expressly provided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective and the provisions of part B shall be controlling with respect to any action or proceeding commenced on or after such effective date." (See *Mercier v Mercier*, 103 Misc 2d 1029, 1030-1031; *Goding v Goding*, 106 Misc 2d 423, 425-426; *Sapone v Sapone*, NYLJ, Sept. 25, 1980, p 18, cols 2-3; *Zervalis v Zervalis*, NYLJ, Jan. 7, 1981, p 14, col 5.) Moreover, the legislative history of the amendments reiterate that part B is only applicable to actions commenced on or after its effective date (see Memorandum in Support of Legislation submitted in accordance with Assembly Rule III, § 1). Therefore, as a matter of statutory construction, part B may only be applied to matrimonial actions commenced on or after July 19, 1980.

## IV. CONSTITUTIONALITY

With respect to actions commenced on or after July 19, 1980, defendant Spencer Tucker contends that the retroactive application of part B of section 236 of the Domestic Relations Law to persons married prior to July 19, 1980 and property acquired prior to July 19, 1980, violates due process and impairs the contractual rights of third parties.

Mr. Tucker claims that the new provisions deprive him of equal protection of the laws, because subdivision 5 of part B divides all people married before July 19, 1980 into two classes: those who commenced actions for dissolution of the marriage before July 19, 1980, and those who did not commence actions for dissolution of the marriage before July 19, 1980.*

The retrospective application of new legislation may offend the due process clause if, upon balancing the considerations on both sides, it appears that retrospective application would be unreasonable (see *Chase Securities Corp. v Donaldson*, 325 US 304). In determining the reasonableness of retrospective application, the "rigidities of old theories of 'vested rights'" have been rejected in favor of the consideration of several factors, i.e., fairness to the parties, reliance on pre-existing law, the extent of retroactivity, and the nature of the public interest to be served by the law (see *Matter of Chrysler Props. v Morris*, 23 NY2d 515, 518, 521; Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv L Rev 692, 697). It is well-settled that certain inchoate rights, and rights which depend upon the existence of the marital status, may be abridged by retroactive legislation (see *Gleason v Gleason*, 26 NY2d 28; *Plancher v Plancher*, 35 AD2d 417, affd 29 NY2d 880). Further, even so-called vested rights may be retroactively modified by remedial legislation (see *Coffman v Coffman*, 60 AD2d 181, 188).

 In a nisi prius decision, *Deschamps v Deschamps* (103 Misc 2d 678, *supra)*, the court held that the retroactive application of part B of section 236 of the Domestic Relations Law to a person married prior to its effective date and to property acquired prior to its effective date, does not offend due process, because the nature of the public interest to be served by the law outweighs any countervailing property interest. Such determination is consistent with a plethora of judicial authority from other States which have upheld the retroactivity of equitable distribution laws for reasons of public policy (see *Matter of Bou-*

---

* Pursuant to section 71 of the Executive Law, the Attorney-General was notified of this constitutional challenge, but chose not to participate in this lawsuit.

*quet*, 16 Cal 3d 583; *Addison v Addison*, 62 Cal 2d 558; *Kujawinski v Kujawinski*, 71 Ill 2d 563; *Corder v Corder*, 546 SW2d 798 [Mo]; *Rothman v Rothman*, 65 NJ 219). In *Rothman v Rothman (supra)* the Supreme Court of New Jersey held that vested rights may be abrogated in the interest of public policy, so long as such rights were not abrogated arbitrarily. Similarly, in *Matter of Bouquet (supra)* the highest tribunal of California held that the State's interest in the equitable distribution of marital property upon dissolution of the marriage justified the impairment of vested property rights.

Moreover, it is questionable whether "vested" rights are in fact impaired by the concept of retroactivity in this instance. Upon dissolution of the marriage, the common law has traditionally required that the court fix support obligations and order one spouse to relinquish property to the other, whether it be in the form of alimony or in some other form.

Traditionally, New York courts authorized to award alimony and/or child support to an aggrieved spouse (see Domestic Relations Law, § 236, part A), may, a fortiori, enforce such authority by directing the sequestering of the property of the other spouse and, should circumstances so warrant, order the sale of such property (see Domestic Relations Law, §§ 233, 243).

Essentially, the provisions of part B of section 236 of the Domestic Relations Law do not create new obligations of support (cf. *Matter of Kane v Necci*, 245 App Div 1, app dsmd 269 NY 13). Rather, they modify and expand remedies already available in order to insure that traditional obligations are satisfied. In *Fournier v Fournier* (376 A2d 100 [Me]), the Supreme Judicial Court of Maine upheld the constitutionality of an equitable distribution statute which applied retroactively to property acquired prior to its effective date, based on the assumption that in any event the aggrieved spouse would have been entitled to support in the form of alimony even under the old law. The court held that the retrospective application of the new law did not affect vested rights because: (1) the law did not affect title to property during the marriage, but

only took effect upon divorce; (2) the Legislature may change the remedies available upon divorce without offending constitutional principles; and (3) there was no "vested right" in a particular statutory procedure governing the disposition of property upon divorce. Similarly, the enactment in New York of part B of section 236 significantly expanded the relief which may be granted upon divorce or dissolution of a marriage, but did not directly affect vested property rights (see *Rothman v Rothman, supra;* see, also, *Matter of Slewett & Farber v Board of Assessors of County of Nassau,* 78 AD2d 403).

Based upon these considerations, we conclude that the retroactive application of part B of section 236 of the Domestic Relations Law to persons married before its effective date and property acquired before its effective date does not violate due process.

Nor does the new law violate constitutional prohibitions against the impairment of contractual rights. It is well-settled that marriage is not a contract within the meaning of the provisions of the Federal Constitution which prohibit impairment of contractual obligations (see *Maynard v Hill,* 125 US 190; *Gleason v Gleason,* 26 NY2d 28, 42-43, *supra; Coffman v Coffman,* 60 AD2d 181, 190-191, *supra).* Thus, insofar as part B affects the rights of spouses vis-à-vis each other, it does not impair any contract rights. Moreover, the new provisions do not authorize the impairment of contract rights of third parties. Rather, the statute explicitly directs the court, in determining the equitable distribution of marital property, to consider such factors as the liquidity or nonliquidity of assets, the desirability of retaining a business intact and free from interference by the other party, and "any other factor which the court shall expressly find to be just and proper" (see Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]). Thus, the contract rights of third parties may be fully protected.

We also reject Mr. Tucker's argument that part B of section 236 deprives married persons of equal protection of the laws because it divides all people married before July 19, 1980 into two classes: those who commenced actions for dissolution of the marriage before July 19, 1980, and those

who did not commence actions for dissolution of the marriage before July 19, 1980. The enactment of new legislation usually creates two classes, i.e., those to whom the statute applies and those to whom the statute does not apply, with the effective date as the arbitrary line of demarcation. It cannot be said that this circumstance deprives anyone of equal protection of the laws (see *Chalmers v Chalmers*, 65 NJ 186).

In support of his claim that part B of section 236 of the Domestic Relations Law offends the equal protection clause insofar as it applies to persons married before July 19, 1980, Mr. Tucker cites *Zervalis v Zervalis* (NYLJ, Jan. 7, 1981, p 14, cols 5, 6, *supra*), which noted that the new provisions did create an anomaly: "[T]he new law was enacted as a remedial statute to cure defects in the existing law but, nevertheless, took effect on a date arbitrarily set. Hence, there have been created two classes of citizens in New York, each seeking a decree of divorce but with different rights and benefits, depending upon whether or not the action was commenced before or after July 19, 1980. How the date July 19, 1980 has any reference as a reasonable ground related to the objective of the legislation cannot be found in a reading of the statute by this court." Ironically, *Zervalis v Zervalis (supra)* advocates expanding the application of part B of section 236, on equal protection grounds, to all actions pending on July 19, 1980.

Contrary to the dicta in *Zervalis v Zervalis (supra)*, we conclude that basing the applicability of part B upon whether the matrimonial action was instituted on or after July 19, 1980 does have a rational basis. Concededly, the new law recognizes that marriage is an economic partnership (see Governor's Memorandum, McKinney's Session Laws of NY, 1980, p 1863). However, in its definition of "marital property", the Legislature has adopted the view that the economic partnership terminates upon "the execution of a separation agreement or the commencement of a matrimonial action" (see Domestic Relations Law, § 236, part B, subd 1, par c). Although reasonable minds may differ as to when the marital relationship is deemed terminated (compare *Brandenburg v Brandenburg*, 83 NJ 198, with *Wife J. v Husband J.*, 367 A2d 655 [Del]), it

cannot be said that the opinion of the Legislature on the economic aspect question is irrational (see *Brandenburg v Brandenburg, supra; Painter v Painter,* 65 NJ 196). Consistent with this analysis, the Legislature, in its wisdom, has provided that part B of section 236 of the Domestic Relations Law should only be applicable to those cases in which the termination of the economic partnership occurred on or after July 19, 1980, as measured by the fact that the matrimonial action was commenced on or after that date.

Although the significance placed upon the commencement date of a matrimonal action has a rational basis, it is manifestly evident that the statutory scheme is susceptible to procedural manipulation. In the cases before this court the parties have attempted, by various procedural means, to manipulate the date of commencement of the action for divorce. We turn now to a discussion of the procedural propriety of their efforts.

V. THE DATE ON WHICH AN ACTION IS DEEMED COMMENCED

The amendments to section 236 of the Domestic Relations Law shed no light on how to determine the date on which a matrimonial action is deemed commenced. However, on this question, section 211 of the Domestic Relations Law provides, in pertinent part: "A matrimonial action shall be commenced by the service of a summons * * * or a summons and verified complaint." Similarly, CPLR 304 provides: "An action is commenced and jurisdiction acquired by service of a summons."

The date on which the action is commenced does not necessarily coincide with the dates on which the claims asserted in that action are interposed (see CPLR 203). In the usual case, the claim or claims in the complaint are interposed when the summons is served upon the defendant (see CPLR 203, subd [b], par 1). Moreover, a claim asserted in an amended pleading is generally "deemed to have been interposed at the time the claims in˜ the original pleading were interposed" (see CPLR 203, subd [e]). However, this general rule does not apply if "the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to

be proved pursuant to the amended pleading" (see CPLR 203, subd [e]; *Harriss v Tams*, 258 NY 229). Further, a defense or counterclaim is not deemed interposed when the summons is served; rather, it is deemed interposed "when a pleading containing it is served" (see CPLR 203, subd [c]).

Mrs. Valladares notes that in September, 1980 her husband interposed a claim for divorce on the ground of adultery, and thereafter she sought and was granted leave to assert a counterclaim for divorce on the ground of adultery. She contends that these claims were not interposed before July 19, 1980 and, therefore, any relief granted with respect to those claims should be governed by part B of section 236. However, the amendments to section 236 do not refer to the dates on which the claims were interposed. The statutory language is plain: the date of the commencement of the action must be deemed controlling.

For most purposes, a defendant who interposes a counterclaim has the same rights as a plaintiff in an independent action (see CPLR 3019, subd [d]; *Brennan v Mead*, 73 AD2d 926). Before the liberalization of the rules of civil procedure, the right of a defendant in a matrimonial action to counterclaim for affirmative relief was severely limited (see *Griffin v Griffin*, 23 How Prac 183; *McIntosh v McIntosh*, 12 How Prac 289; *Diddell v Diddell*, 3 Abb Prac 167; Fourteenth Ann Report & Studies of NY Judicial Council, 1948, pp 224-225), and defendant was often forced to assert those claims in a separate action. Since it did not serve the interest of judicial economy to require the prosecution of separate actions, those restrictions were lifted (see *Ames v Ames*, 109 Misc 161; Fourteenth Ann Report & Studies of NY Judicial Council, 1948, p 227). However, defendant still has the option of commencing a separate action (see *Urbanski v Urbanski*, 107 Misc 2d 215; *Davis v Davis*, 150 NYS 636). Regrettably, the amendments to section 236 of the Domestic Relations Law make it advantageous for some defendants to exercise that option.

Mrs. Valladares may only come within the ambit of Part B of section 236 if she commences a separate action on her claim. Special Term properly held that if she inter-

poses a counterclaim in the pending action, which was commenced before July 19, 1980, part A of section 236 of the Domestic Relations Law must apply. Therefore, in this case, the order appealed from should be affirmed.

In the case where there are two matrimonial actions pending, one commenced before July 19, 1980 and the other commenced on or after July 19, 1980, the actions may be consolidated for trial purposes (see CPLR 602, subd [a]). If only one party prevails, the date on which that party's action was commenced will be deemed controlling. However, where both parties assert meritorious claims in separate actions, the court is faced with two controlling dates, and two conflicting statutory schemes (see *Cooper v Cooper*, 103 Misc 2d 689, 695, *supra*). In that instance, the date on which the first action was commenced should be deemed controlling (cf. *Lynch v Lynch*, 79 AD2d 675), and, in the case of a dual divorce, part A of section 236 would normally preclude an award of alimony to either spouse (see *Cooper v Cooper, supra*, p 695).

## VI. THE PROPRIETY OF DISCONTINUANCE WITHOUT PREJUDICE

Mrs. White and Mrs. Tucker find themselves in a diametrically different position from Mrs. Valladares. As plaintiffs they each commenced an action for divorce before July 19, 1980 and, thereafter, each was granted leave to discontinue her action without prejudice for the purpose of commencing a new action which would be controlled by part B of section 236 of the Domestic Relations Law.

Since issue had been joined in each case, the plaintiff wife therein could not exercise the statutory right to discontinue an action without prejudice and without leave of the court (see CPLR 3217, subd [a], par 1; cf. *Kamhi v Kamhi*, 42 AD2d 966; *Hutchison v Hutchison*, 87 Misc 2d 1071, affd 55 AD2d 817; *Green v Green*, NYLJ, Sept. 25, 1980, p 18, col 1), and therefore each wife had to seek leave of the court (see CPLR 3217, subd [b]).

An application for leave to discontinue an action without prejudice "is addressed to the legal, not the arbitrary, discretion of the court" (see *Winans v Winans*, 124 NY 140, 145), and thus should be granted unless there are reasons

which would justify its denial. The general rule is that plaintiff should be permitted to discontinue the action without prejudice, unless defendant would be prejudiced thereby (see *Ruderman v Brunn*, 65 AD2d 771; *Mahaffey v Mahaffey*, 52 AD2d 1039; *Schimansky v Nelson*, 50 AD2d 634; *Bateholts v Russell*, 35 AD2d 761). The fact that defendant has been subjected to the expense and trouble of defending the suit may entitle him to costs, but generally would not preclude plaintiff from discontinuing the action (see *Laxer v Bergen & Zaager*, 178 Misc 391, affd 264 App Div 710; *Grosner v Abramson*, 162 Misc 731).

Plaintiff should be permitted to discontinue an action without prejudice in order to rectify a tactical error (see *Schimansky v Nelson, supra*) or to simplify the form of the action to avoid juror confusion (see *Bateholts v Russell, supra*). However, generally, leave to discontinue an action without prejudice should not be granted to enable plaintiff to circumvent the effect of a court order in defendant's favor, since prejudice would inure to defendant (see *Schneider v Schneider*, 32 AD2d 630; *Schultz v Kobus*, 15 AD2d 382).

In matrimonial actions, the courts have broader discretion to grant or deny leave to discontinue without prejudice, because the interests of society and third parties (e.g., children) may be at stake (see *Winans v Winans, supra*). However, in the cases before us, each plaintiff (Mrs. White and Mrs. Tucker) sought leave to discontinue her action for the purpose of circumventing the "special controlling provisions" of section 236 of the Domestic Relations Law, as amended (see *Schneider v Schneider, supra; Schultz v Kobus, supra*).

Moreover, the remedies prescribed in part B of section 236 are substantially different from the provisions of part A. Therefore, plaintiffs' discontinuance of their actions was, in these instances, inherently prejudicial (see *Mercier v Mercier*, 103 Misc 2d 1029, 1034-1035, *supra; Goding v Goding*, 106 Misc 2d 423, 426, *supra*). This point is underscored by defendants' attempts to interpose counterclaims in the pending actions. If a defendant timely interposes a counterclaim in an action commenced prior to July 19, 1980,

and that counterclaim is sustained at trial, part A of section 236 would preclude any award of alimony to plaintiff. In an action governed by part B of section 236, on the other hand, a plaintiff's purported misconduct would not preclude an award of maintenance and/or marital property (see *Deschamps v Deschamps*, 103 Misc 2d 678, 680-682, *supra*).

As plaintiffs, Mrs. White and Mrs. Tucker chose to commence actions for divorce prior to July 19, 1980, presumably with the understanding that former section 236 of the Domestic Relations Law, now part A of section 236 of the Domestic Relations Law, would govern their rights. Therefore, the application of part A is not contrary to the interests of justice.

For these reasons, we conclude that Mrs. White and Mrs. Tucker should not have been granted leave to discontinue their actions, commenced before July 19, 1980, without prejudice. Thus, in *White* and *Tucker*, the orders appealed from should be reversed, and the motion of each plaintiff denied.

The result would be different if the moving party had interposed a counterclaim on or after July 19, 1980 in an action commenced before July 19, 1980, and thereafter sought leave to discontinue the counterclaim in order to commence a separate action governed by part B of section 236 of the Domestic Relations Law. If the claim could have been brought in the form of an action governed by part B of section 236 at the time it was first interposed, discontinuance would only serve to correct a tactical error of form and not of substance (see *Ruderman v Brunn*, 65 AD2d 771, *supra; Schimansky v Nelson*, 50 AD2d 634, *supra*). Although this may seem like somewhat of a procedural Never-Neverland, these distinctions must be made in order to implement the intent of the Legislature without unduly exalting form over substance. Resulting inequities, if any, should be brought to the attention of the Legislature for correction, and not the courts.

Further, defendants should be granted leave, pursuant to CPLR 3025 (subd [b]) to amend their answers, if so advised, to assert their counterclaims for divorce. CPLR 3025 (subd [b]) provides, in pertinent part, that "[l]eave

[to amend] shall be freely given *upon such terms as may be just*" (emphasis supplied). Since these actions are governed by part A of section 236, defendants' assertion of counterclaims in these actions could result in cutting off plaintiffs' rights to alimony, if plaintiffs are found guilty of misconduct. Therefore, to avert any prejudice to plaintiffs, leave to amend should only be granted to defendants on condition that they stipulate that plaintiffs' rights will not be affected by a finding of misconduct, and on any other conditions which Special Term deems just (see CPLR 3025, subd [b]).

GIBBONS, O'CONNOR and THOMPSON, JJ., concur.

Action No. 1:

Order of the Supreme Court, Nassau County, dated December 10, 1980, affirmed insofar as appealed from, with $50 costs and disbursements.

Action No. 2:

Order of the Supreme Court, Westchester County, entered September 26, 1980, reversed, on the law, with $50 costs and disbursements, defendant's motion for leave to amend his answer is granted, upon condition that he stipulates that plaintiff's rights will not be affected if she is found guilty of misconduct, and upon any other conditions which Special Term deems just (see CPLR 3025, subd [b]), and plaintiff's cross motion for leave to discontinue the action without prejudice is denied.

Action No. 3:

Order of the Supreme Court, Queens County, entered October 29, 1980, reversed, on the law, with $50 costs and disbursements, plaintiff's motion for leave to discontinue the action without prejudice is denied, and defendant's cross motion to amend his answer is granted, upon condition that he stipulates that plaintiff's rights will not be affected if she is found guilty of misconduct, and upon any other conditions which Special Term deems just (see CPLR 3025, subd [b]).