OPINION OF THE COURT
Vincent R. Balletta, Jr., J.
Trial was scheduled in this matter for August 29, 1980. Plaintiff has brought on a motion to strike the case from the calendar, or in the alternative, to stay the proceedings until the defendant can be examined before trial, and further, for an order permitting the amendment of the complaint, which motion was returnable on the trial date. Plaintiff seeks to amend the complaint so as to allege a right to equitable distribution of the marital property or to permit a distributable award, all of which is based upon the newly enacted amendments to section 236 of the Domestic Relations Law.
It should be noted that the action was commenced by the service of the summons on October 11, 1979, and that the amendments to section 236 of the Domestic Relations Law became effective on July 19, 1980.
Plaintiff takes the position that section 236 as amended is not applicable only to cases which were commenced after July 19,1980, but that the equitable distribution provisions are likewise applicable to actions commenced prior *424 to the effective date of the law. In the event permission to amend the complaint were to be granted, then it follows that the case would have to be stricken from the calendar or stayed for additional proceedings since the plaintiff would be required to seek substantial disclosure in order to proceed to trial.
The court is not unmindful of prior decisions of Trial Judges which have addressed this issue. In Deschamps v Deschamps (103 Misc 2d 678), Mr. Justice McCaffrey ruled that the provisions of section 236 with respect to equitable distribution are applicable to those matters commenced prior to the effective date of the law. On the other hand, Mr. Justice Morrie Slifkin, in Cooper v Cooper (103 Misc 2d 689), rejected Justice McCaffrey’s position, but allowed the action to be discontinued on the basis that there was no prejudice to the defendant. In reality, the two decisions have one effect, the difference being that Justice McCaffrey applies the new law to the pending action, whereas Justice Slifkin allows the current action to be discontinued, thereby permitting a new proceeding to be commenced under the new law.
Section 236 of the Domestic Relations Law is somewhat novel. It seeks to accomplish two things at the same time. Firstly, the Legislature sought “to eliminate unconstitutional sex distinctions in child and spousal support statutes by amending related statutes primarily in the domestic relations law and family court act”, and secondly, it sought “to establish a new concept of support and distribution of property by implementation of the terms ‘maintenance’, ‘distributive award’, and ‘marital property’. The original statute dealing with alimony is incorporated to deal with proceedings commenced prior to the effective date.”
The above is taken directly from the amended legislative memorandum in support of the legislation dated July 1, 1980. In order to accomplish its ends and to develop legislation which would be acceptable to both the Senate and the Assembly, section 236 of the Domestic Relations Law contains a preamble which reads as follows: “Special controlling provisions; prior actions or proceedings; new actions or proceedings. Except as otherwise expressly pro *425 vided in this section, the provisions of part A shall be controlling with respect to any action or proceeding commenced prior to the date on which the provisions of this section as amended become effective and the provisions of part B shall be controlling with respect to any action or proceeding commenced on or after such effective date. Any reference to this section or the provisions hereof in any action, proceeding, judgment, order, rule or agreement shall be deemed and construed to refer to either the provisions of part A or part B respectively and exclusively, determined as provided in this paragraph any inconsistent provision of law notwithstanding.”
The preamble is clear and concise, providing that part A of section 236 shall be applicable to actions currently pending, and further providing that part B would control only actions commenced after the effective date of the statute, which was July 19,1980. The confusion stems from a reading of subdivision 2 and subdivision 5 of part B. Subdivision 2, entitled “Matrimonial actions”, reads in part as follows: “Except as provided in subdivision five of this part, the provisions of this part shall be applicable to actions * * * commenced on and after the effective date of this part.” The exception referred to in subdivision 2 is carried forward from the preamble of section 236, which uses the phrase “Except as otherwise expressly provided in this section”. Subdivision 5 of part B is that portion of the statute which deals with the substantive matter of changing the entire concept of the law so as to establish the rights of the parties with respect to separate property and marital property, and further, to make an “equitable distribution” of the marital property. That subdivision has a specific exception in paragraph a, which states: “Except where the parties have provided in an agreement for the disposition of their property pursuant to subdivision three of this part”. That exception is directly referrable to the preamble of the statute previously quoted (“Except as otherwise expressly provided in this section”), and subdivision 2 of part B previously quoted (“Except as provided in subdivision five of this part”). Although the drafting of the statute may have been somewhat inartful, it is clear from reading these portions that the legislative intent was to create a new *426 system for maintenance and distribution of assets only with respect to those actions commenced after the effective date of the statute. The exception referred to in subdivision 2 and subdivision 5 refers to an agreement which the parties may have made between themselves so as to relieve them of the strict interpretation of the legislation. It is noted that the amended memorandum in support of the legislation has been quoted in prior decisions, but the quotes have referred to philosophical aspects only. The amended memorandum is clear in setting forth the intent of the Legislature, and the court quotes directly from the pertinent parts:
“§ 236 is divided in PART A and PART B:
“PART A — is the original alimony provision — made g-n, which is to control m any actions commenced prior to the effective date of the bill. A compulsory financial disclosure subdivision is added requiring compulsory disclosure by both parties of their financial states without requiring a showing of special circumstances.
“Modifications are to be under PART A.
“PART B — is to control in all matrimonial actions and proceedings after the effective date. The following concepts are introduced”.
To hold that equitable distribution was meant to apply to actions commenced prior to the effective date of the statute would fly in the face of clear legislative intent and totally annul and destroy the weeks and months of effort on the part of the Senate and Assembly in developing legislation which could be acceptable to both houses of the Legislature. It should be noted that the amended memorandum is dated July 1, 1980, just prior to the time the bill was actually passed by both houses of the Legislature. Furthermore, it is well known that the Assembly and the Senate had differing views as to this proposed legislation, and that there were substantial negotiations in order to reach a conclusion suitable to both houses. One of the points of contention was the question of the effective date of equitable distribution. The fact that the amended memorandum, which was obviously prepared after all of the negotiations had been completed, continues the concept of separating *427 the effective dates of part A and part B, is further evidence that to apply the principles of equitable distribution retroactively to actions instituted prior to July 19, 1980 would do violence to the legislative intent.' Likewise, to permit a party to discontinue an action commenced prior to July 19, 1980 and to commence a new action so as to come under the equitable distribution principles would also do violence to the legislative intent in that it would permit a party to circumvent the statute and to do indirectly what they could not do directly. It would be akin to putting the court’s imprimatur on circumventing the legislative intent behind the statute. Inartful though the language may be, I am confident that the Legislature, in its wisdom, will make whatever changes may be necessary to clear up differing interpretations which have already surfaced.
Justice Slifkin’s decision, which allows a discontinuance so that a new action may be commenced, is based upon his finding of no prejudice, which in his judgment justifies the court granting the application to discontinue. In addition to circumventing the legislative intent, this court cannot agree that a discontinuance of proceedings commenced prior to the effective date of this statute does not prejudice one of the parties. When an action is commenced, the party bringing that action has full knowledge of his or her rights. It is clear that the new legislation provides an expanded right with respect to the allocation of property, and the party having legal title to that property would be severely prejudiced by the discontinuance of the action and the commencement of another action under the new law. Although the courts of this State are liberal in permitting a plaintiff to discontinue an action, such is not the case where, as here, “substantial rights have accrued or his adversary’s rights would be prejudiced thereby”. (Louis R. Shapiro, Inc. v Milspemes Corp., 20 AD2d 857.)
There might be those who disagree in principle with providing different sets of rules for actions commenced at different times, but the province of the court is to interpret legislation rather than attempt to rewrite it so as to conform to a set of principles which many Judges may feel is more equitable. The court can find nothing in the legislative intent to establish a new set of rules for actions *428 commenced after a specific date which would be violative of any constitutional rights, or improper. Indeed, quite to the contrary, it is where a statute is sought to be applied retroactively that it may have to meet a stiffer constitutional test. (Usery v Turner Elkhorn Min. Co., 428 US 1.) Although it may be possible to develop a philosophical treatise as to why equitable distribution should apply in all cases, that would be stretching the jurisdiction of the court so as to violate the traditional concept of separation of powers.
A short-form order is being signed simultaneously herewith denying the plaintiff’s motion.