Meyer, J.
(dissenting). The majority’s seductively simple semantic solution is, in my view, both so unfair as to be presumptively contrary to the Legislature’s intent, if not unconstitutional, and unrealistic in its analysis of that intent.
Its unfairness is revealed more by what it does not say than by what it does, for it makes no mention at all of what the result would be had Mrs. Valladares commenced an *394 independent action rather than asserted a counterclaim.[1] Clearly such an action would be, within the language of part A of section 236, an “action commenced on or after such effective date” and, within the language of part B, an action “for a divorce * * * commenced on and after the effective date of this part,”[2] notwithstanding that her husband may thereafter have been successful in obtaining an order consolidating or requiring joint trial of her action with his (see Berger v Berger, 84 AD2d 545). To make the power to award the increased share of marital property provided for in part B turn on whether the spouse to whom the award would be made served a counterclaim in the other spouse’s earlier commenced action or began a separate and independent action after the effective date of part B is wholly unreasonable as a matter of both procedure and substance.
It is unreasonable as a matter of procedure because CPLR 3019 (subd [d])[3] mandates that “A cause of action contained in a counterclaim * * * shall be treated, as far as practicable,[4] as if it were contained in a complaint, except that separate process, trial or judgment may not be had *395 unless the court so orders” (italics supplied). Section 211 of the Domestic Relations Law and CPLR 304, relied on by the Appellate Division to fix when a matrimonial action is commenced, speak to how jurisdiction is acquired[5] and clearly were not written with a view to determining when the action commenced within the meaning of parts A and B of section 236 of the Domestic Relations Law. CPLR 203 (subd [c]) to which the majority refers is confirmatory of the direction in CPLR 3019 (subd [d]), for together they establish that, though no summons need be served for a counterclaim, the cause of action it states will be treated as if it were contained in a complaint, that is, as CPLR 203 (subd [c]) states “is interposed when a pleading containing it is served.” In light of those provisions, and particularly of CPLR 3019 (subd [d]), there was no reason for the Legislature, in amending section 236 of the Domestic Relations Law, to speak specifically to an action for divorce commenced by the service of an answer containing a counterclaim.
The majority’s conclusion is unreasonable as a matter of substance because it makes the right to equitable distribution turn on the form of the pleading by which the divorce action is begun, a consideration that is entirely without significance in relation to the substantial property interests that in many cases will be involved and which serves no rational legislative purpose. Counterclaims were unknown to the procedural law of New York until introduced by chapter 392 of the Laws of 1852 (see Second Ann Report of NY Judicial Council, NY Legis Doc, 1936, No. 48, pp 124-129; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3019.01). Their addition to our procedural law was essentially for the convenience of the courts, which would otherwise have to try some of the same issues twice (Second Ann Report of NY Judicial Council, p 123 [“the avoidance of *396 multiplicity of suits”]), and of the defendant who by pleading his claim as a counterclaim could avoid the expense of two trials and the possibility of conflicting decisions. It was never intended to award a substantive benefit to a plaintiff against, whom it is asserted, as the majority now holds it does. How egregiously wrong is its substantive result is graphically illustrated when one considers that the rule now adopted forecloses equitable distribution without regard to fault or the merit of the counterclaim: a spouse further above suspicion than Caesar’s wife can, therefore, be deprived of equitable distribution benefits by a mate living in open adultery if only the mate’s attorney had the foresight to serve a summons on or before July 18, 1980 in a wholly unjustified and unjustifiable divorce action, provided only the spouse’s attorney, seeking to save his client’s money and the court’s time, makes the fatal mistake of pleading the spouse’s divorce for adultery cause of action as a counterclaim rather than in a separate action.
The majority’s result is unrealistic in its analysis of legislative intent, as well. First, the Legislature must be presumed to have been aware of the definition and direction of CPLR 3019 and, therefore, to have regarded it as wholly unnecessary to speak of “an action or counterclaim” in the 1980 amendment, because it had already defined one as included within the other.[6] Second, though it is true, as the majority notes, that the section was the subject of intensive study not only by a number of. legislative com-. mittees but by a number of Bar associations, individually and in consortium (Foster & Freed, Law & the Family [1982 Supp], § 33:1, pp 798-799), nothing in any of the literature generated during the six years that equitable distribution bills were before the Legislature prior to adoption of the 1980 bill suggests that either the proponents or *397 the opponents of the concept intended to make, or argued for making, the availability of equitable distribution benefits turn on the form in which the matrimonial claim was, presented to the court rather than the date on which it was presented by the proponent of the claim. Any realistic appraisal of the legislative process must recognize that what the enacting bodies react to is the recommendations of its own committees and legislative drafting service and the pressures brought to bear by interested outside groups, and that its reaction is at times the compromise of deliberate obscurity, leaving to the courts the divination of what was intended. Here, however, it is the court that obscures the legislative intent by reading the word “action” without reference to CPLR 3019 and then insisting that the “plain meaning” of the word excludes a counterclaim, even though CPLR 3019 says the exact contrary.
The order of the Appellate Division should be reversed, the question certified should be answered in the negative, and the matter should be remitted to Supreme Court with directions to grant defendant’s motion to amend including the demand for equitable distribution.
Chief Judge Cooke and Judges Jasen, Gabrielli and Wachtler concur with Judge Jones; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs.
Order affirmed, with costs. Question certified answered in the affirmative.

. That the counterclaim was asserted after July 19, 1980, the effective date of the 1980 amendments tó section 236 of the Domestic Relations Law, distinguishes this case from those such as Gellman v Gellman (80 AD2d 735) and Goding v Goding (106 Misc 2d 423), in which it was sought to amend or discontinue an action or counterclaim begun prior to July 19, 1980.

. (See Urbanski v Urbanski, 107 Misc 2d 215; Bofinger v Bofinger, 107 Misc 2d 573; Miller v Miller, NYLJ, Dec. 24, 1980, p 15, col 5.)

. The CPLR applies to matrimonial actions except as specific provisions of the Domestic Relations Law otherwise provide (cf. Domestic Relations Law, § 232, subd a; and see CPLR 105, subd [a]; 4312, subds [2], [5]; 4502). That this is true as to a counterclaim in a matrimonial action is established beyond cavil by the repeal on the recommendation of the Judicial Council (Fourteenth Ann Report of NY Judicial Council, NY Legis Doc, 1948, No. 14, pp 53-55, 223-227) of section 1168 of the Civil Practice Act, which had contained special provision for a matrimonial counterclaim, on the ground that the section was unnecessary in light of the provisions of that act concerning counterclaims generally contained in section 266 of the Civil Practice Act (the predecessor of CPLR 3019), and the failure to include in either article 11-A or article 13 of the Domestic Relations Law any provision regulating matrimonial counterclaims. Nor is there anything in the legislative history or wording of the 1980 amendment to section 236 of the Domestic Relations Law which suggests that CPLR 3019 (subd [d]) was not intended to apply to a matrimonial counterclaim, as there was, for example, when CPLR 3212 (former subd [d]) was repealed and section 211 of the Domestic Relations Law was amended to permit unlimited summary judgment in a matrimonial action.

. No argument has been made that it would be impracticable, either generally or in *395 this particular case, to treat defendant’s counterclaim as if contained in a separate complaint (see Bofinger v Bofinger, 107 Misc 2d 573, supra; Foster & Freed, Law & the Family [1982 Supp], § 33:3, p 802).

. Section 211 of the Domestic Relations Law provides that “A matrimonial action shall be commenced by the service of a summons * * * or a summons and verified complaint.” CPLR 304 states that “An action is commenced and jurisdiction acquired by service of a summons.” (Emphasis added.)

. That the Legislature so considered when enacting the CPLR is borne out by its notation with respect to now repealed CPLR 3212 (subd [d]) governing summary judgment in a matrimonial action. Subdivision 4 of prior rule 113 of the Rules of Civil Practice had authorized summary judgment on the basis of documentary evidence or official records with respect to “an action or counterclaim” in a matrimonial action. The revisers stated with respect to CPLR 3212 (subd [d]) (then designated as 3252, subd [d]) that the 1960 bill had been amended in that “ ‘Cause of action’ substituted for ‘action or counterclaim’ with no change in meaning” (Fifth Prelim Report of Advisory Comm on Practice & Procedure, NY Legis Doc, 1961, No. 15, p 490 [italics supplied]).