OPINION OF THE COURT
Eli Wager, J.
The phenomenon of “reverse summary judgment,” in which a moving defendant asks the court to impose judgment against the movant and in favor of a reluctant plaintiff, is a strategy which has surfaced recently in matrimonial actions. Should this court sanction this “unnatural act” in a fault (abandonment) divorce action and, at the request of and for the benefit of the “guilty” defendant, award an unwanted judgment to the “victim” plaintiff? Is a noncounterclaiming defendant entitled to take control of the prosecution of such an action and determine the course of the litigation contrary to the plaintiff’s wishes? Upon consideration of relevant law and the public policy of this State, the conclusion is impelled that the answers to these questions must be no.
The defendant husband (who has withdrawn the denials in his answer to plaintiff’s allegations of abandonment) moves for partial summary judgment granting a divorce to the plaintiff on the ground of abandonment, leaving only *1039 the financial issues still to be resolved. It appears that plaintiff commenced the action in 1978 alleging adultery and abandonment. The answer, served on September 15, 1978, denied the allegations and contained no counterclaim. After completion of discovery, a note of issue was filed on February 21,1980, an unsuccessful pretrial conference was held on June 19, 1980 and the matter first set down for trial on August 25, 1980. On plaintiff’s application, the trial was adjourned sine die until such time as the appellate courts in either the First or Second Department decided whether a party could discontinue and reinstitute a matrimonial action so as to take advantage of the equitable distribution provisions in the amended Domestic Relations Law (§ 236, part B) which had become effective on July 19, 1980. Ultimately, the case was marked off the calendar and then restored and, after more adjournments, marked off again. Plaintiff,does not deny that the case has not been restored even though the Appellate Division, Second Department, on May 4,1981 in Valladares v Valladares (80 AD2d 244, affd 55 NY2d 388) and Tucker v Tucker (80 AD2d 244, modified 55 NY2d 378) ruled that the determinative time for applicability of part B of section 236 of the Domestic Relations Law is when an action is commenced and that an action cannot be discontinued voluntarily without prejudice to the commencement of a new action governed by the amended statute. (See, also, Pollack v Pollack, 84 AD2d 748, affd 56 NY2d 968.) Thus, there appears to be merit in defendant’s contention that plaintiff’s strategy is to have the case dismissed for failure to prosecute so that she may recommence an action in which she could seek equitable distribution, and the issue is whether there is a remedy available to defendant which can avoid that result.
Motions for partial summary judgments in favor of the nonmoving party in matrimonial actions have met with mixed responses from the courts since CPLR 3212 was amended in 1979 to delete the restrictions on summary relief in such actions (L 1978, ch 532, §§ 1, 2, 3, eff Jan. 1, 1979) and particularly since the advent of equitable distribution in 1980.
*1040 The “father of the reverse summary judgment procedure” in matrimonial actions (see Edelstein & Brown, Reverse Summary Judgment: Subterfuge or Salvation, Family L Rev, vol 14, No. 1) is Hickox v Hickox (72 AD2d 688) decided by the Appellate Division, First Department, on November 8, 1979 before the advent of equitable distribution and after the amendments to CPLR 3212. The motion of the defendant husband in Hickox for summary judgment on the conversion causes of action pleaded in the amended complaint and in a counterclaim in the amended answer was granted, to the extent that summary judgment was awarded to the plaintiff and her causes of action for divorce based on cruel and inhuman treatment and adultery were dismissed. Noting that summary judgment could not be granted to the defendant because issue had not been joined on the counterclaim before the motion was made and the plaintiff raised a question of fact as to whether the defendant had substantially performed all the terms and conditions of the separation agreement, the court ruled that summary judgment could be awarded the nonmoving party pursuant to CPLR 3212 (subd [b]). Although the plaintiff “declined” to accept summary judgment on the conversion cause of action, wishing to obtain a judgment on fault grounds, the court ruled that no-fault grounds enable parties to extricate themselves from a “dead marriage” more easily and that even if she might have succeeded at trial on fault grounds she would “in the end, have gained no more rights or benefits” (supra, p 689). The only issue left for trial (the separation agreement apparently disposing of all other ancillary issues) was custody and on that issue the court ruled that the plaintiff could still seek to adduce relevant evidence of misconduct.
Hickox appears to be the authority relied upon in later cases decided after the effective date of equitable distribution where reverse summary judgment motions have been granted, even though in each of them the judgment was granted on fault grounds (constructive or actual abandonment; see, e.g., Reardon v Reardon, NYLJ, July 23, 1981, p 12, col 1; Giannola v Giannola, 109 Misc 2d 985; Meyer v Meyer, NYLJ, Nov. 13, 1981, p 17, col 2; Kove v Kove, NYLJ, Nov. 5, 1981, p 11, col 1; Melendez v Melendez, *1041 NYLJ, April 14, 1982, p 12, col 1; Douek v Douek, 112 Misc 2d 882).
In each case, it was necessary to refer ancillary issues to a referee or to set them down for trial. However, in apparent recognition of the hazards posed by such a procedure, the court in Giannola v Giannola (supra) refused to dismiss the second fault ground (adultery) pleaded in the complaint, reasoning that marital fault is a factor which may be considered in making distributive and maintenance awards (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]; subd 6, par a, cl [10]); in Douek v Douek (supra) entry of summary judgment was held in abeyance pending determination of the ancillary issues; and in Melendez v Melendez (supra) a temporary restraining order was imposed to protect the assets of the marriage.
The courts which have denied summary judgment in favor of nonmovants in equitable distribution cases (all of them brought on fault grounds) have cited possible court congestion provoked by bifurcated trials (see, e.g., Wegman v Wegman; 112 Misc 2d 716; Miller v Miller, NYLJ, Feb. 4, 1982, p 12, col 3; Leeds v Leeds, 114 Misc 2d 555) or have expressed concern that a grant of summary judgment would preclude consideration of marital fault as a factor in distributive and maintenance awards (Miller v Miller, supra; see, also, Giannola v Giannola, NYLJ, Nov. 10, 1981, p 14, col 4 [where Justice Geiler refused to sign the judgment granted by Justice Murov submitted after Justice Murov had retired]). Three courts denied such motions upon the ground that such a procedure would violate the Domestic Relations Law or its underlying policy: in Wegman the court pointed out that the Domestic Relations Law no longer contains any provision for an interlocutory judgment and that part B of section 236 provides only for a determination of rights and disposition of property in a final judgment; in Librizzi v Librizzi (112 Misc 2d 57) the court noted that the statute does not sanction consensual divorces unless there is compliance with subdivision (6) of section 170 of the Domestic Relations Law; and in Leeds {supra, p 557) the court cited Librizzi for the proposition that “the seemingly automatic entitlement to end a dead marriage is statutorily permitted only after the ‘ancillary’ *1042 issues have been adjudicated by the court in an action for separation or addressed by the parties in a separation agreement.”
Indeed, it does appear that reverse summary judgment is an inappropriate remedy in a matrimonial action where there has been no separation agreement or decree of separation. There is nothing in Hickox v Hickox (72 AD2d 688, supra [the only ruling on the issue by an appellate court]) which would dictate a contrary result. In fact, the existence of the separation agreement in Hickox was the sine qua non for the court’s utilization of the reverse summary judgment procedure in the newly amended CPLR 3212 (subd [b]). The procedure was deemed appropriate because the no-fault groünds in subdivisions (5) and (6) of section 170 of the Domestic Relations Law enable parties to extricate themselves from a “dead marriage” more easily and are the most “expeditious” and least “painful” means of obtaining a divorce. To construe the case as authority for the proposition that CPLR 3212 (subd [b]) provides an expeditious means to end a marriage where the only evidence that it is “dead” is the conceded fault of one of the parties flies in the face of the court’s expressed rationale — and indeed of the legislative intent underlying the Domestic Relations Law.
The context in which the Divorce Reform Law of 1966 (L 1966, ch 254) was enacted was the conciliation procedure, then in effect, designed to serve as a check on impetuous divorce (see 1 Foster & Freed, Law and the Family, § 6.8). Even after the conciliation provisions were repealed, the no-fault provisions of the statute continued to require a period of living apart and “ ‘evidence of the authenticity and reality of the separation’ ” in the form of a separation decree or agreement (Christian v Christian, 42 NY2d 63, 70). These restrictions on no-fault divorces are consonant with New York’s traditional approach to divorce which has always been geared to preserving the marital relationship (see, e.g., Hunter v Hunter, 10 AD2d 291). Thus, to force a judgment of divorce upon an innocent spouse in the absence of statutory consensual grounds simply because an immediate termination of the marriage suits the conve *1043 nience of the spouse at fault would appear contrary to both the letter and spirit of the statute.
Furthermore, forcing summary disposition in favor of a reluctant nonmovant, thus precluding the right to a trial on the merits, appears to be an unusual application of CPLR 3212 (subd [b]); in the ordinary case, the nonmoving party either urges the existence of fact issues which would preclude judgment for the movant or argues the merits of his or her own case, indicating in every way but a formal cross motion that summary judgment in her or his favor would be welcome. The statute provides that the absence of a cross motion does not preclude entry of a judgment in favor of the nonmovant, but it does not mandate such a judgment. Precisely because summary judgment precludes a litigant from presenting his evidence to a Judge or jury, it is deemed a drastic remedy which should be used sparingly (Christie’s [Int.] S. A. v Gugliarda, 65 AD2d 714). As the court in Ross v Ross (84 AD2d 569, affd 55 NY2d 999) said of CPLR 3017 (subd [a]) (which authorizes the granting of relief appropriate to the proof whether or not demanded), awarding relief against the wishes of the prevailing party in a matrimonial action bestows a benefit on the wrongdoer by granting him relief to which he has not proved himself entitled and penalizes the innocent plaintiff. Even though in Ross the relief granted by the lower court (a divorce) was not the relief sought by the plaintiff whereas in the reverse summary judgment cases the relief sought by the movant and nonmovant is the same, the reasoning of the reversing court is germane.
Since the instant defendant seeks summary judgment on a fault ground and there is no separation agreement which would authorize a finding of a “dead marriage”, the conclusion is impelled that his motion must be denied.
Unfortunately, there appears to be no remedy this court can grant which would preclude the possibility of plaintiff achieving her evident goal; defendant has not interposed a counterclaim which might have provided a basis for summary relief; and a sua sponte order directing an immediate trial would appear to be a futility since neither this court nor the trial court could force plaintiff to proceed. A dismissal on the merits pursuant to CPLR 3216 would defeat *1044 defendant’s desire for a divorce and would in any event not preclude plaintiff from bringing a new action on new grounds governed by part B of section 236 of the Domestic Relations Law — unless defendant were able to persuade a court that she “voluntarily” discontinued this action within the rule of Tucker and Pollack. Assuming that defendant is entitled to a remedy, it would appear that such a remedy is a matter for legislative action.
The motion is denied.